UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

                           Plaintiffs,

            -against-

ROYAL WASTE SERVICES, INC, and WASTE
CONNECTIONS OF NEW YORK, INC.,

                        Defendants.
-------------------------------------------------------------x

Civil Action No.

**COMPLAINT**

**M A D A M S/S I R S:**

Plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY ("LMFIC"), by

their attorneys, JAFFE & ASHER LLP, as and for its Complaint against ROYAL WASTE

SERVICES, INC, ("Royal Waste") and WASTE CONNECTIONS OF NEW YORK, INC.

("Waste Connections"), alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a) by reason of the diversity of citizenship of the parties and the fact that the amounts in

controversy exceed the sum of $75,000 exclusive of costs.  This is an action for damages based

upon breach of contract for deductibles on insurance policies.

2.      At all times hereinafter mentioned, LMFIC was, and still is, a stock

insurance company organized under the laws of the State of Wisconsin, with its principal place

of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

3.      At all times hereinafter mentioned, LMFIC was, and still is, an insurance

company duly authorized to conduct business within the State of New York.

1

4.    Upon information and belief, at all times hereinafter mentioned, Royal Waste was, and still is, a corporation organized under the laws of the State of Delaware, with its principal place of business located at 18740 Hollis Avenue, Hollis, NY 11423-2808.

5.    Upon information and belief, at all times hereinafter mentioned, Royal Waste was, and still is, in the business of refuse services.

6.    Upon information and belief, at all times hereinafter mentioned, Waste Connections was, and still is, a corporation organized under the laws of the State of Delaware, with its principal place of business located at 2630 Park Ave, Bronx, NY 10451.

7.    Upon information and belief, at all times hereinafter mentioned, Waste Connections was, and still is, in the business of refuse services

8.    This Court has venue over this matter pursuant to 28 U.S.C. §1391; Waste Connections resides in the Southern District of New York for purposes of venue.

## FACTUAL ALLEGATIONS

9.    At the specific instance and request of Royal Waste, LMFIC issued a Business Auto Policy AS2-631-510640-038, with policy period from November 15, 2018 to November 15, 2019, to Royal Waste as the First Named Insured (the "2019 Auto Policy").

10.    The 2019 Auto Policy provides, in relevant part, as follows:

E.    PREMIUMS

The first Named Insured shown in the Declarations:

1.    Is responsible for the payment of all premiums; and

2.    Will be the payee for any return premiums we pay.

2

11.     The 2019 Auto Policy includes an endorsement entitled DAMAGES

DEDUCTIBLE – ALL COVERAGE EXCEPT PHYSICAL DAMAGE INSURED PAYS ALL

SUPPLEMENTARY PAYMENTS, which provides, in relevant part, as follows:

**SCHEDULE**
All Coverage except Physical Damage Coverage
Deductible Amount $1,000,000 each "accident"

Applicable Policies:

1.  You are responsible, up to the Deductible Amount shown in the Schedule, for all payments for damages for any coverage except PHYSICAL DAMAGE COVERAGE provided by a policy listed under Applicable Policies. If a single "accident" is covered by more than one policy listed in Applicable Policies, your responsibility for damages will not exceed the Deductible Amount shown above.

    In addition to the Deductible Amount, you are responsible to pay all Supplementary Payments incurred under the policies listed in Applicable Policies. This obligation does not affect our rights and duties with respect to defense of "suits".

2.  We are responsible for those amounts of damages to which this insurance applies and subject to the applicable limits of insurance that exceed the Deductible Amount shown in the Schedule. The applicable limit of insurance is reduced by the amount of damages paid or payable by you within the Deductible Amount.

3.  All other terms of the policy, including those with respect to:

    a. Our rights and duties with respect to the defense of "suits"; and

    b. Your duties in the event of an "accident" apply irrespective of the application of the Deductible Amount.

4.  We have the right but not the duty to advance any part or all of the Deductible Amount. Exercise of our right to advance such amounts shall not create any obligations or be construed as giving rise to any course of dealing nor be construed as a waiver or estoppel of our rights under this policy.

3

5. In the event we recover any advance or payment under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the Deductible Amount; only then shall the remainder of such recovery, if any, be applied to reduce the Deductible Amount payable or paid by you.

6. This endorsement shall not be applicable to the extent that it is inconsistent with obligations under any Financial Responsibility Law, Personal Injury Protection Law, Uninsured Motorists Law or any motor carrier financial responsibility requirement of the Department of Transportation or of any state regulatory agency. However, you shall promptly reimburse us for any advance or payment that we make within the Deductible Amount stated in the Schedule.

12. At the specific instance and request of Royal Waste, LMFIC issued a Business Auto Policy AS2-631-510640-037, with policy period from November 15, 2017 to November 15, 2018, to Royal Waste as the First Named Insured (the "2018 Auto Policy").

13. The 2018 Auto Policy provides, in relevant part, as follows:

**E.** PREMIUMS

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

14. The 2018 Auto Policy includes an endorsement entitled DAMAGES DEDUCTIBLE – ALL COVERAGE EXCEPT PHYSICAL DAMAGE INSURED PAYS ALL SUPPLEMENTARY PAYMENTS, which provides, in relevant part, as follows:

**SCHEDULE**
All Coverage except Physical Damage Coverage
Deductible Amount $1,000,000 each "accident"

Applicable Policies:

1. You are responsible, up to the Deductible Amount shown in the Schedule, for all payments for damages for any coverage

4

except PHYSICAL DAMAGE COVERAGE provided by a policy listed under Applicable Policies. If a single "accident" is covered by more than one policy listed in Applicable Policies, your responsibility for damages will not exceed the Deductible Amount shown above.

In addition to the Deductible Amount, you are responsible to pay all Supplementary Payments incurred under the policies listed in Applicable Policies. This obligation does not affect our rights and duties with respect to defense of "suits".

2.  We are responsible for those amounts of damages to which this insurance applies and subject to the applicable limits of insurance that exceed the Deductible Amount shown in the Schedule. The applicable limit of insurance is reduced by the amount of damages paid or payable by you within the Deductible Amount.

3.  All other terms of the policy, including those with respect to:

    a. Our rights and duties with respect to the defense of "suits"; and

    b. Your duties in the event of an "accident" apply irrespective of the application of the Deductible Amount.

4.  We have the right but not the duty to advance any part or all of the Deductible Amount. Exercise of our right to advance such amounts shall not create any obligations or be construed as giving rise to any course of dealing nor be construed as a waiver or estoppel of our rights under this policy.

5.  In the event we recover any advance or payment under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the Deductible Amount; only then shall the remainder of such recovery, if any, be applied to reduce the Deductible Amount payable or paid by you.

6.  This endorsement shall not be applicable to the extent that it is inconsistent with obligations under any Financial Responsibility Law, Personal Injury Protection Law, Uninsured Motorists Law or any motor carrier financial responsibility requirement of the Department of Transportation or of any state regulatory agency. However, you shall promptly

5

reimburse us for any advance or payment that we make within the Deductible Amount stated in the Schedule.

15.    At the specific instance and request of Royal Waste, LMFIC issued a Commercial General Liability policy number TB2-631-510640-028, with a policy period from November 15, 2018 to November 15, 2019, issued to Royal Waste as the First Named Insured (the "2019 CGL Policy").

16.    The 2019 CGL Policy provides, in relevant part, as follows:

**E.**    PREMIUMS

The first Named Insured shown in the Declarations:

**1.**    Is responsible for the payment of all premiums; and

**2.**    Will be the payee for any return premiums we pay.

17.    The 2019 CGL Policy includes an endorsement entitled Deductible – Damages You Are Responsible for all Supplementary Payments, which provides, in relevant part, as follows:

**SCHEDULE**

Bodily Injury and Property Damage Liability, Personal and Advertising Injury Liability and Medical Payments
**DEDUCTIBLE AMOUNT**
$ 1,000,000

Supplementary Payments
YOU PAY ALL

A. DEDUCTIBLE

DAMAGES ERODE DEDUCTIBLE, INSURED PAYS ALL SUPPLEMENTARY PAYMENTS

1. You are responsible, up to the Deductible Amount shown in the Schedule, for all damages, including amounts paid in settlement of a claim or "suit" and medical payments, plus

6

2. You are responsible for all SUPPLEMENTARY PAYMENTS

because of all "bodily injury" and "property damage" under Coverage A that results from any one "occurrence", all "personal and advertising injury" under Coverage B sustained by any one person or organization and all "bodily injury" sustained by one person under Coverage C.

We are responsible for those amounts of damages and medical expenses to which this insurance applies (subject to the applicable limits of insurance) that exceed the Deductible Amount shown in the Schedule.

We have the right but not the duty to advance any part or all of these amounts. Exercise of our right to advance such amount shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy.

B. Paragraph 1. of SUPPLEMENTARY PAYMENTS COVERAGES A & B is amended to reflect your responsibility to pay SUPPLEMENTARY PAYMENTS described in paragraph A. above.

C. EFFECT OF DEDUCTIBLE ON LIMITS OF INSURANCE

The Each Occurrence Limit, the Personal and Advertising Injury Limit, the Medical Expense Limit and any applicable aggregate limits of insurance are reduced by the amount of damages, as referred to in paragraph A. above, paid or payable by you within the deductible.

D. CONDITIONS

1. Recovery from Others

In the event we recover any advance or payment made under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the Deductible Amount; only then shall the remainder of such recovery, if any, be applied to reduce the Deductible Amount payable or paid by you.

2. Cancellation

You must (a) promptly pay all amounts for which you are responsible under this endorsement, and (b) reimburse us for any

7

such amounts that we pay or advance upon receipt of a billing from us.

If you fail to do so, we may, at our option and to the extent permitted by law, cancel either this endorsement or this policy by mailing or delivering to you notice of cancellation pursuant to the terms applicable to cancellation for nonpayment of premium in the policy or an endorsement thereto.

3. Your Duties

a. The first Named Insured shown in the Declarations agrees and is authorized to pay all Deductible Amounts on behalf of all Named Insureds and to reimburse us for any such amounts that we advance.

b. Each Named Insured is jointly and severally liable for all Deductible Amounts under this policy.

4. Other Rights and Duties (Ours and Yours)
All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or "suit" against you, and (b) your duties if injury occurs, apply irrespective of application of this endorsement.

18.    On or about December 19, 2017, Royal Waste, as "Policyholder" and LMFIC, an affiliate of Liberty Mutual Insurance Company, entered into a 'Collateral and Payment Agreement (the "Payment Agreement").

19.    The Payment Agreement provides, in relevant part, as follows:

"Insurance Policy" and "Insurance Policies" is defined in the recitals. Liberty Mutual may amend this Agreement at any time to list additional Insurance Policies. To the extent each additional policy meets the definition of Insurance Policy, the amendment need not be signed by either party.

20.    The Payment Agreement defines in the recitals, inter alia, the 2018 Auto Policy as an "Insurance Policy".

8

21.    The Payment Agreement was amended on or about February 9, 2022 to include the 2019 CGL Policy and the 2019 Auto Policy as "Insurance Policies" under the Payment Agreement.

22.    The Payment Agreement provides, in relevant part, as follows:

**2.2** Deductible Advances, Premiums, and Other Agreements. Pursuant to the terms of the Insurance Policies, Liberty Mutual may advance deductible amounts, loss limit amounts, or allocated loss adjustment expenses on behalf of policyholder or make payments pursuant to the terms of the MCS-90 for which the Policyholder is responsible. The Policyholder may also become obligated to pay Liberty Mutual audited, adjusted, or other premiums, as well as other amounts pursuant to the Insurance Policies or other agreements.

To the extent not reflected in the applicable rating plan(s), Policyholder shall reimburse Liberty Mutual for any taxes, interest, fines or penalties paid or advanced by Liberty Mutual which are attributable to any deductible amounts under the Insurance Policies and for any state assessments, surcharges or other charges paid or advanced by Liberty Mutual, including but not limited to those that relate to any second injury fund, guaranty fund, residual market, reinsurance pool, or other compulsory plan or mechanism and any interest, fines or penalty charges thereon.

All amounts due from the Policyholder pursuant to or described in this Section 2.2 are referred to herein as "Obligations".

**2.3** Reimbursement and Payment. The Policyholder shall reimburse or pay to Liberty Mutual any and all such advances, premiums and other amounts described in Section 2.2 on or before the due date of any written notice by Liberty Mutual to the Policyholder that reimbursement or payment is required.

23.    The Payment Agreement provides, in relevant part, as follows:

**3.3 Expenses.** The Policyholder shall pay to Liberty Mutual upon demand any and all expenses, including, without limitation, reasonable attorney fees and expenses and the fees and expenses of any experts and agents incurred or paid by Liberty Mutual (a) in protecting, preserving, or enforcing any of its rights and remedies hereunder, or (b) necessitated by the Policyholder's failure to perform or observe any of the provisions hereof. The

9

payment of such fees, costs and expenses shall be included in "Obligations" as defined hereunder.

24.    Pursuant to the Payment Agreement, LMFIC had paid losses and allocated expenses to the 2019 CGL Policy, the 2019 Auto Policy, and the 2018 Auto Policy (collectively, "the Policies") in an amount of no less than $1,495,248.51.

25.    Pursuant to the terms of the Payment Agreement, Royal Waste is responsible for the reimbursement of loss payments and allocated expenses under the Policies and has failed to reimburse LMFIC for $1,495,248.51 in loss payments and allocated expenses pursuant to the Policies.

26.    LMFIC have frequently demanded payment from Royal Waste of the balance due on this account stated, including by the following invoices:

    i.    Invoice #10885372, dated June 2, 2025, in the amount of $107,846.57 attributable to the 2019 Auto Policy, due on July 1, 2025;

    ii.    Invoice #10929758, dated July 3, 2025, in the amount of $14,271.46, including $5,580.23 attributable to the 2018 Auto Policy and $8,691.23 attributable to the 2019 Auto Policy, due on August 1, 2025;

    iii.    Invoice #10974218, dated August 4, 2025, in the amount of $6,755.33, including $391.66 attributable to the 2018 Auto Policy, $5,372.98 attributable to the 2019 Auto Policy, and $990.69 attributable to the 2019 CGL Policy, due on September 1, 2025;

    iv.    Invoice #11018798, dated September 3, 2025, in the amount of $3,318.64 attributable to the 2019 Auto Policy, due on October 1, 2025;

v.   Invoice #11063413, dated October 2, 2025, in the amount of $7,807.56, including $5,368.18 attributable to the 2018 Auto Policy and $2,439.38 attributable to the 2019 Auto Policy, due on November 1, 2025;

vi.   Invoice #11108143, dated November 2, 2025, in the amount of $19,573.96, including $505.89 attributable to the 2018 Auto Policy, $14,772.45 attributable to the 2019 Auto Policy, and $4,295.62 attributable to the 2019 CGL Policy, due on December 1, 2025;

vii.   Invoice #11152919, dated December 2, 2025, in the amount of $10,446.09, including $8,642.62 attributable to the 2018 Auto Policy and $1,821.47 attributable to the 2019 Auto Policy, due on January 1, 2026;

viii.   Invoice #07257758, dated December 8, 2025, in the amount of $926,862.01 attributable to the 2019 Auto Policy, due on December 15, 2025;

ix.   Invoice #11152919, dated January 3, 2026, in the amount of $19,740.75, including $4,569.21 attributable to the 2018 Auto Policy and $15,171.54 attributable to the 2019 Auto Policy, due on February 1, 2026;

x.   Invoice #11242699, dated February 2, 2026, in the amount of $13,521.25, including $1,287.26 attributable to the 2018 Auto Policy, $6,897.89 attributable to the 2019 Auto Policy, and $5,336.10 attributable to the 2019 CGL Policy, due on March 1, 2026;

xi.   Invoice #11287744 dated March 2, 2026, in the amount of $353,746.53, including $161.70 attributable to the 2018 Auto Policy and $353,584.83 attributable to the 2019 Auto Policy, due on April 1, 2026; and

11

xii. Invoice #11332808 dated April 2, 2026, in the amount of $11,358.36, including $5,448.84 attributable to the 2018 Auto Policy, $5,658.28 attributable to the 2019 Auto Policy, and $251.24 attributable to the 2019 CGL Policy, due on May 1, 2026.

27. The last credit received on behalf of Royal Waste and/or Waste Connections was prior to June of 2025. Inclusive of all credits, there remains $1,495,248.51 due and owing from Royal Waste and Waste Connections relating to the Policies.

28. No subsequent payments have been received since June of 2025.

29. Pursuant to the 2019 Auto Policy, LMFIC had paid losses and allocated expenses to the 2019 Auto Policy in an amount no less than $1,452,437.27.

30. Pursuant to the Deductible Endorsement of the 2019 Auto Policy, Royal Waste is responsible for the reimbursement of loss payments and allocated expenses and has failed to reimburse LMFIC for $1,452,437.27 in loss payments and allocated expenses pursuant to the 2019 Auto Policy.

31. Pursuant to the 2018 Auto Policy, LMFIC had paid losses and allocated expenses to the 2018 Auto Policy in an amount no less than $31,937.59.

32. Pursuant to the Deductible Endorsement of the 2018 Auto Policy, Royal Waste is responsible for the reimbursement of loss payments and allocated expenses and has failed to reimburse LMFIC of at least $31,937.59 loss payments and allocated expenses pursuant to the 2018 Auto Policy.

33. Pursuant to the 2019 CGL Policy, LMFIC had paid losses and allocated expenses to the 2019 CGL Policy in an amount of no less than $10,873.65.

34.     Pursuant to the Deductible Endorsement of the 2019 CGL Policy, Royal Waste is responsible for the reimbursement of loss payments and allocated expenses and has failed to reimburse LMFIC for $10,873.65 in loss payments and allocated expenses pursuant to the 2019 CGL Policy.

35.     Pursuant to the Payment Agreement, LMFIC had paid losses and allocated expenses to the 2019 CGL Policy, the 2019 Auto Policy, and the 2018 Auto Policy (collectively, "the Policies") in an amount of no less than $1,495,248.51

36.     Pursuant to the terms of the Payment Agreement, Royal Waste is responsible for the reimbursement of loss payments and allocated expenses under the Policies and has failed to reimburse LMFIC for $1,495,248.51 in loss payments and allocated expenses pursuant to the Policies.

37.     LMFIC has incurred and will continue to incur attorney fees and expenses necessitated by the Policyholder's failure to perform or observe the provisions of the Payment Agreement.

38.     Upon information and belief, Waste Connections purchased the assets and liabilities of Royal Waste.

39.     Upon information and belief, Waste Connections expressly assumed the contractual and tort liabilities of Royal Waste.

40.     Upon information and belief, Waste Connections impliedly assumed the contractual and tort liabilities of Royal Waste.

41.     Upon information and belief, Waste Connections' purchase of the assets of Royal Waste was a de facto merger.

13

42.    Upon information and belief, Waste Connections has continued the enterprise of Royal Waste.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Breach of Contracts)

43.    LMFIC repeats and realleges each and every allegation contained in paragraphs "1" through "42" of this Complaint as set forth at length herein.

44.    The 2019 Auto Policy constitutes a binding contract between LMFIC and Royal Waste.

45.    LMFIC performed all obligations owed to Royal Waste under the terms of the 2019 Auto Policy set forth herein.

46.    Although duly demanded, Royal Waste failed and refused to pay the sum of $1,452,437.27due and owing to LMFIC for the 2019 Auto Policy.

47.    As a result of the foregoing LMFIC has been damaged in the sum of $1,452,437.27, plus interest from April 1, 2026.

48.    The 2018 Auto Policy constitutes a binding contract between LMFIC and Royal Waste.

49.    LMFIC performed all obligations owed to Royal Waste under the terms of the 2018 Auto Policy set forth herein.

50.    Although duly demanded, Royal Waste failed and refused to pay the sum of $31,937.59 due and owing to LMFIC for the 2018 Auto Policy.

51.    As a result of the foregoing LMFIC has been damaged in the sum of $31,937.59, plus interest from April 1, 2026.

52.    The 2019 CGL Policy constitutes a binding contract between LMFIC and Royal Waste.

53. LMFIC performed all obligations owed to Royal Waste under the terms of the 2019 CGL Policy set forth herein.

54. Although duly demanded, Royal Waste failed and refused to pay the sum of $10,873.65 to LMFIC for the 2019 CGL Policy.

55. As a result of the foregoing LMFIC has been damaged in the sum of at least $10,873.65, plus interest from April 1, 2026.

56. The Payment Agreement constitutes a binding contract between LMFIC and Royal Waste.

57. LMFIC performed all obligations owed to Royal Waste under the terms of the Payment Agreement set forth herein.

58. Pursuant to the terms of the Payment Agreement, Royal Waste is responsible for the reimbursement of loss payments and allocated expenses under the Policies and has failed to reimburse LMFIC for $1,495,248.51 in loss payments and allocated expenses pursuant to the Policies.

59. Although duly demanded, Royal Waste failed and refused to pay the sum of $1,495,248.51 to LMFIC for the Payment Agreement.

60. Upon information and belief Waste Connections has successor liability for the $10,873.65 due and owing to LMFIC for the 2019 CGL Policy as it expressly assumed Royal Waste liabilities, impliedly assumed Royal Waste's contractual liabilities, continued the enterprise of Royal Waste and/or had a de facto merger with Royal Waste.

61. Upon information and belief Waste Connections has successor liability for the $31,937.59 due and owing to LMFIC for the 2018 Auto Policy as it expressly assumed Royal

15

Waste liabilities, impliedly assumed Royal Waste's contractual liabilities, continued the enterprise of Royal Waste and/or had a de facto merger with Royal Waste.

62. Upon information and belief Waste Connections has successor liability for the $1,452,437.27 due and owing to LMFIC for the 2019 Auto Policy as it expressly assumed Royal Waste liabilities, impliedly assumed Royal Waste's contractual liabilities, continued the enterprise of Royal Waste and/or had a de facto merger with Royal Waste.

63. Upon information and belief Waste Connections has successor liability for the $1,495,248.51 due and owing to LMFIC under the Payment Agreement as it expressly assumed Royal Waste liabilities, impliedly assumed Royal Waste's contractual liabilities, continued the enterprise of Royal Waste and/or had a de facto merger with Royal Waste.

64. As a result of the foregoing LMFIC has been damaged in the sum of at least $1,495,248.51, plus interest, and it is entitled to recovery of attorneys' fees and other costs incurred in the prosecution of this action and efforts to collect the amounts due.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Action On Account Stated)

65. LMFIC repeats and realleges each and every allegation contained in paragraphs "1" through "64" of this Complaint as set forth at length herein.

66. Royal Waste has an account with Liberty Mutual.

67. Royal Waste accepted the account and invoices as correct and have never objected to the amounts stated therein in a reasonable time frame.

68. As a result of the foregoing LMFIC has been damaged in the sum of at least $1,495,248.51, plus interest, and it is entitled to recovery of attorneys' fees and other costs incurred in the prosecution of this action and efforts to collect the amounts due.

16

**WHEREFORE**, plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY demands judgment as follows:

(a)　On and for the First Claim for Relief, against defendants ROYAL WASTE SERVICES, INC. and WASTE CONNECTIONS OF NEW YORK, INC. in the sum of $1,495,248.51, plus interest, and the attorneys' fees and other costs incurred in the prosecution of this action and collection efforts made by Liberty Mutual; and

(b)　On and for the Second Claim for Relief, against defendants ROYAL WASTE SERVICES, INC. and WASTE CONNECTIONS OF NEW YORK, INC. in the sum of $1,495,248.51, plus interest, and the attorneys' fees and other costs incurred in the prosecution of this action and collection efforts made by Liberty Mutual; and

(c)　Granting plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
　　　　June 9, 2026

　　　　　　　　　　　　　　　　Yours, etc.,

　　　　　　　　　　　　　　　　JAFFE & ASHER LLP

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　Marshall T. Potashner, Esq.
　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　LIBERTY MUTUAL FIRE
　　　　　　　　　　　　　　　　INSURANCE COMPANY
　　　　　　　　　　　　　　　　445 Hamilton Avenue, Suite 405
　　　　　　　　　　　　　　　　White Plains, New York 10601
　　　　　　　　　　　　　　　　(212) 687-3000

17